No. 67.—Field & Adams, plaintiffs in error, *vs.* Ruth E. Reid, defendant in error.

[1.] If the verdict is not supported by the evidence, a new trial will be granted.

[2.] The parties to a suit are not, in general, admissible as witnesses in their own favor.

Assumpsit, from Bibb Superior Court.    Tried before Judge Allen, at November Term, 1856.

This was an action by Ruth E. Reid, against Field & Adams, to recover three thousand five hundred and fifty-five dollars and three cents, the amount alleged to have been paid on the drafts of defendants, drawn on cotton and paid by plaintiff, over and above the proceeds of the cotton forwarded, as per account rendered and annexed.

Defendants pleaded :

1st. The general issue.

2d. Payment.

3d. That the cotton was sold in violation of orders, and thereby defendants sustained loss.

4th. That plaintiff had compromised her liability to the holders of the drafts by paying twenty-five cents in the dollar, and had received a large amount thereon, not accounted for to defendants.

5th. That said drafts had not been paid by plaintiff, and were still open against defendants.

6th. Accord and satisfaction.

Evidence for plaintiff:

*F. A. Wellman,* sworn : The account of $3,513 95 is correct and just, and due as it stands stated, (witness then having in his hands plaintiff's writ, with account attached thereto.)

I say it is due as stated, I am certain I am not mistaken. (Drafts specified in the account proven and admitted.)

*Cross Examined*—Ruth E. Reid never received any of the cotton on the account stated, and never sold any of it. Witness did all the business.   It is not usual for ladies to attend to such business.   All the cotton was not sold at maturity of the bills.   The lot of twenty-eight and seventy-one bales were shipped to E. & R. R. Graves, New York, and the

lot of eighty-three bales were shipped to Elibon & Co., Philadelphia. And all the balance of the lot respectively, were sold by me in Savannah, at the time stated in the account sued on, and for the prices therein stated, and I gave defendants credit for the cotton so sold, and at the time when sold ; gave them credit for the full amount of sales as stated in the account

As to the twenty-eight and seventy-one bales, I shipped these to New York by the order and direction of defendants, to E. & R. R. Graves; and when I shipped said two lots, I drew on them for the full amount of the invoice price of the cotton drawn on me for said two lots, twenty-eight and seventy-one bales, and added thereto the freight, charges and incidental expenses of the cotton to Savannah. The house of Graves sold the two lots of cotton. I received the account of the sales by letter, and transmitted them to Field & Adams. The drafts drawn on E. & R. R. Graves, were discounted by me in Savannah, and I got the money for them. And so as to the lot of eighty-three bales sent to Elibon & Co., Philadelphia. I was not present when the cotton was sold in New York, or in Philadelphia. I received the account of sales by letter from E. & R. R. Graves, and from Elibon & Co., Philadelphia.

[The witness was not permitted to testify as to the amount of sales in New York or Philadelphia, because, as was shown by the witness, this information was received by letter, and consequently there was higher evidence of it than his testimony, and the Court repelled the witness as to amount of sales in New York and Philadelphia.] So as to the eighty-three bales of cotton sold in Philadelphia. I was not present at the sale. Elibon & Co. paid the draft that I drew on them. They have the draft. I have never settled with Elibon & Co. There is a running unsettled account between Ruth E. Reid and Elibon & Co.

Ruth E. Reid failed in 1851, and has not resumed busi-

Field & Adams vs. Reid.

ness; still involved and insolvent. She had assets amounting to $50,000, and owed $38,000, when she failed.

I received by mail from my agent, A. R. Ralston, a note of $3,000 on defendants, having twelve months to run, without interest. Ralston had authority also to settle with R. F. Ousley and C. F. Wheeler. I received the note of $3,000 from Ralston, and in a few days thereafter, transferred it to the Planters Bank. I never returned it to defendants or offered to return it to them. I never told C. G. Wheeler or R. F. Ousley in Savannah or in Macon, in April or May, 1852, or at either place at any time, that defendant had fully settled with plaintiff, nor that Ralston, had, as her agent, settled with defendants. I might have told one or both of them, that defendant had settled with Ralston for the overdraws. Wheeler had made overdraws,—had drawn drafts and got the money, and had not shipped the cotton to me.

*Re-examined*—Field & Adams drew on me for more cotton than they sent to meet their bills, amounting to a little more than $2,800.

About six months before suit was brought, I called at defendant's place of business, in Macon. It was after the Spring Term of Bibb Superior Court. Mr. Fields was not in. I called three or four times at different visits to Macon. I saw Mr. Adams and left the account current, as now sued on, with him. He made no objection to the account. He said he must see his Senior partner about it, who was absent in the country. He made no objection to it after seeing the original. Here defendant's counsel asked the witness, Wellman, if he did not in a few days after calling on Adams, as above testified, receive a letter signed Field & Adams, addressed to him in Savannah. Plaintiff's counsel insisted that it was not in rebuttal, but permitted defendant's counsel to reintroduce the witness, Wellman, as plaintiff's witness. Wellman then said, I received a subpœna *duces tecum* on 28th March last, 1856, to produce the letter inquired of; I never received any such letter at any time. I received all

letters directed to me as agent, or to R. E. Reid. No such letter as mentioned was ever received. I have no such letter, never had.

Testimony for defendants.

*Calvin G. Wheeler*, sworn: I saw A. R. Ralston about the 1st of March, 1851, when he came to Macon, as agent for plaintiff, to settle with defendants and witness, and R. F. Ousley. I had repeated conversations with him about the settlement. Ralston told me I could make a better settlement with him, than I could if I let it stand. I looked over my account in favor of plaintiff and found it incorrect in several particulars, and would not settle the account; and because some of the cotton was unsold. I saw Ralston on Monday morning after he had settled with defendants. He told me he had settled that morning and urged that as a reason why I should settle with him, Ralston. I never made any overdraws on Wellman—never. I sent him more cotton than the proceeds of the discounted drafts amounted to. Wellman told me in Savannah, about one year after March 1851, say in April or May, 1852, that defendants had settled their account with him, and complained that I had not settled at the same time with his agent Ralston.

*Robert F. Ousley*, sworn: I saw A. R. Ralston about the 1st of March, 1851, when he came to Macon as agent of plaintiff to settle with defendants, and Calvin G. Wheeler and witness. He showed me all three accounts, and urged a settlement, as plaintiff's agent, on Monday. I saw him on the morning after he had settled with Field and Adams. He urged me to settle, and stated he had settled with defendant's that morning. Wellman told me in Savannah, in 1851, and in April or May, 1852, that defendants had fully settled with him; told me so twice or more. I am not mistaken. I know he told me so twice or more.

Defendant then introduced the motion docket of Bibb Superior Court, with entries thereon, as follows:

| Philip D. Woolhopter, agent. | Garnishment. |
| *vs.* | |
| Ruth E. Reid, defendant, | |
| Calvin G. Wheeler, | July Term. 1851. |
| Newtigate Ousley, | Default, and order to answer. |
| Thomas F. Ousley, | |
| John M. Fields, | May Term, 1852. |
| Abram B. Adams, | Traverse, and issue docket. |
| Charles Cotton, | |
| James Rea, | The above entries in the |
| Alex. R. Ralston, | hand-writing of Judge of |
| Garnishees. | Superior Court. |

Law & Bartow, plaintiff's attorneys.

Hines; and S. & Lester, contra.

Defendant then read the following receipt, by consent of counsel:

$3,000.    Received of Field & Adams, three thousand dollars in full of all demands to date, or otherwise.

A. R. RALSTON, for<br>RUTH E. REID.

Macon, March 2d, 1851.

It was admitted by plaintiff's counsel that plaintiff had compromised her account in favor of E. and R. R. Graves, at twenty-five cents in the dollar.

Defendants' counsel offered to prove by testimony that Adams was book-keeper of the firm of Field & Adams, that they kept no clerk; that Adams received all the letters addressed to the firm and answered all the correspondents. And after laying such foundation, offered to introduce both defendants to prove that an original letter was written by the firm directed to F. H. Wellman, agent, Savannah, Georgia, and put in the Post Office at Macon, Georgia, by him, Adams, a copy of which (the original copy kept at the time in

the hand writing of Adams,) was then offered, and by which it appeared that some day or two after Wellman had called on Adams for settlement of the account, and when he, Adams, first saw his senior partner, Field, that said original letter was then written, denying that defendants owed plaintiff anything, and utterly denying plaintiff's right to ask, demand or receive anything from them, but claiming that they had settled, and had his receipt in full.   The Court refused fo let defendants swear:  it being admitted that they could prove that Adams was book-keeper, received and answered the firm letters, and that they kept no Clerk.

*A. R. Ralston's* answers to interrogatories:

1st. I knew the parties; 2d. 1 went to Macon 10th or 12th of March, 1851, by direction of F. A. Wellman, agent of plaintiff, for the purpose of collecting money from Field & Adams.   3d. I went to their warehouse and saw one or both of the defendants, and made known my business.   They objected to a settlement at that time, on the ground that their cotton was shipped and not yet sold; that the market might improve and the difference between the amount drawn against it and the amount it might bring, when sold, might be more favorable to them, or words to that effect.   I then requested them to pay over money raised by them by drafts on plaintiff for near $3,000, and had not been laid out in cotton and forwarded to meet them.   They admitted the claim, but said they could not raise the money at that time. 4th.  Two or three days after my first interview with defendants, I ascertained that the Bank of Brunswick was about to garnishee myself, defendants and others; I concluded to see them and take their note for the amount of money kept back by them; and it being late on Saturday night, I did not succeed until about one o'clock on Monday morning.   Mr. Adams set up with me at the hotel.   When the note was given I was about to write a receipt for the note on account; to this he objected, and wrote a receipt himself,

which would enable them to answer the garnishment. I objected to the form of the receipt, and he said, " If Mr. Wellman would not be satisfied with it, it should be given up by returning the note. After reflecting upon the subject, I could not see how advantage could be taken against losses on cotton which was unsold, and would not be, for some time to come. I signed the receipt and enclosed the note to Mr. Wellman, and had it put in the Post Office at the same same hour of the night. The note was for $3,000, at twelve months, without interest or security, which was for the money kept back by them. My own reason for taking the note at all, was to defeat the Bank of Brunswick, and to justify me in making such settlement, I beg to say I have seen the agent and made known the great injury it would be to F. A. Wellman agent, and the Bank; for if I could only secure the payment of the cash kept back by the defendants, it would enable plaintiff to pay off the note, the debt to the Bank— and go on in business.

*Cross Interrogatories*—1st. I did not expect to prevent a garnishment, but if it had not been for the apprehended garnishment, I would not have taken this note, for the money they had retained of plaintiff, at twelve months without interest or security. The defendants could safely answer the garnishment, as they did not acknowledge or admit any indebtedness for losses on cotton, nor could they know until they received account sales; and this I presume was not done till after they filed their answer. 2d. About one o'clock Monday morning, I concluded the business with Mr. Adams. I considered myself authorized to do all toward the settlement that I did. 3d. I have been sworn in this case. The note was taken to prevent the Bank garnishment from taking it. The only writing was the note taken and receipt given.

Signed,                  A. R. RALSTON.

Counsel for defendants requested the Court to charge the jury, as follows:

If the jury believe from the evidence, that Wellman swore positively, that the amount of the account, $3,500, or about that sum, was justly due as it stands stated; yet if the same witness, on cross examination, shows that he derived from others all his information in relation to the matter in controversy, then the testimony as to those items is and becomes hearsay, and you will so consider it; and the Court charges that hearsay evidence is not proper testimony for your consideration in this cause. 2d. A factor cannot recover from his customer any more than reasonable and customary charges, incidental expenses, and money advanced or paid for the use of his customer. Therefore, if you believe from the evidence that Wellman for plaintiff drew on E & R. R. Graves, the full invoice of the twenty-eight and seventy-one bales of cotton with freight and incidental expenses added; then if you so believe, the proceeds of such drafts should of right be applied to the payment of the drafts of Field & Adams; and if he Wellman had to respond to Graves, and only paid twenty-five cents in the dollar; plaintiff can only recover the sum paid by plaintiff, and the compromise made inures to the benefit of Field & Adams. 3d. So as to the eighty-three bales shipped to Elibon & Co., Philadelphia, if plaintiff has not proven to your satisfaction that he paid the reclamation or difference between the drafts on Elibon & Co. and the net proceeds of the sale of eighty-three bales of cotton, then as to the said eighty-three bales of cotton, you cannot estimate any loss upon it unless plaintiff has proved that she has paid the loss, and then only for such sum, so actually paid.

It was perfectly competent for the parties by themselves or their agents, to get together and trade as to the probable rise or fall of the cotton then on hand. And if they did so contract and did settle in full; subject to the ratification of Wellman, and if Wellman kept the note, and if you believe that by so keeping the note, he ratified a full settlement and adopted the receipt as signed by Ralston; then

the settlement was binding on Field & Adams, and if bind-
ing on them, it will be and is binding on plaintiff.

If you believe from the whole evidence, that defendant, by
the acts, conduct and statements of plaintiff, considered the
settlement of 2d March, 1851, as final, and it was only en-
tered into by them on the footing of a final settlement,
plaintiff cannot, by a secret reservation to herself, escape the
consequences of her written contract, and being binding on
defendants, is binding on plaintiff.

As to the account rendered: if you should believe from
the evidence that an account current was rendered to one of
the partners, who replied that he must see the senior partner;
should you so believe, and further, that at the same time a gar-
nishment was pending, you will look into the matter, and give
it such weight as you think it entitled to. At best, leaving
an account is but slight presumption, and presumptions may
be overcome by presumptions, and it is for you to consider
the fact or question of leaving the account, and of the pend-
ing of the garnishment at the time.

All of which the Court charged.

The jury found for the plaintiff $2,297 10 cents principal,
and $750 30 cents interest. Defendants moved to set aside
the verdict and for a new trial, on the following grounds,
viz:

1st. Because the jury found against the evidence, and
without evidence to support the verdict.

2d. Because the finding of the jury is strongly and decid-
edly against the weight of evidence.

3d. Because the jury found against the charges of the
Court and each of them, all of which are particularly here-
inafter set out and made part of this motion.

4th. Because said charges and each of them are sound law,
and were overlooked or not listened to, or disregarded by the
jury.

5th. Because the Court erred in refusing to let defendants
and each of them swear as to writing the original letter in-

quired of Wellman, under the case made as hereinafter set out.

6th. Because the jury could not possibly have had any legal testimony to authorize or justify their finding, for the reasons following: 1st. plaintiff's witness, the only witness for plaintiff, testifies, and the testimony is wholly uncontradicted, that the drafts drawn on E. & R. R. Graves, New York, and Elibon & Co., Philadelphia, covered the full amount of the drafts for the twenty-eight, seventy-one and eighty-three bales of cotton, freight, charges and incidental expenses added, and that the loss to E. & R. R. Graves, was compromised at twenty-five cents in the dollar, amounting, as is shown by calculation, to less than $300. And plaintiff's witness proves that the loss on the eighty-three bales to Elibon & Co. has never been paid. And plaintiff's own showing as to Savannah sales, is a loss on all the cottons sold in Savannah at less than $200, and plaintiff proves that the over-draw as charged was paid. So taking every loss as proven by plaintiff as legal evidence, the verdict should be set aside. And it being shown that the New York and Philadelphia shipments were made for and on account of defendants. 2d. Because even if leaving the account sued on with defendants or a copy thereof, yet at most it is a presumption of the correctness of the account, (the particular account) and plaintiff's witness, and only witness, states that said account is incorrect in this: 1. No credit was given or allowed defendant for the compromise with E. & R. R. Graves, admitted to have been made at 25 cents in the dollar. 2. No credit was given for the bill or draft drawn on Elibon & Co., Philadelphia, or the proceeds of the draft. 3. No credit was given for the two drafts drawn on E. & R. R. Graves, New York. 3d. Because said verdict as to interest is illegal and erroneous in this: First, because the account sued on was an open account and unliquidated: And second, because said account is made up of commissions and charges, &c. and no particulars were specified or proven as to cash advanced, or

Field & Adams vs. Reid.

money paid. Third, because the jury would have had no data upon which to find how much or how little was liquidated.

After hearing argument, the Court refused the motion for a new trial, and thereupon defendant by their counsel except, and tender their bill of exceptions.

Stubbs, Hill & Tracy, for plaintiffs in error.

E. A. & J. A. Nesbit, for defendant in error.

*By the Court.*—Benning J. delivering the opinion.

The question is, was the Court below right in overruling the motion for a new trial?

That motion was put on grounds which may be reduced into these three:

- 1st. That the verdict was not authorized by the evidence.

2d. That the defendants (below) were rejected when offered as witnesses in their own behalf.

3d. That interest was given in the verdict.

As to the first of these three grounds:

The verdict was for $2,397 10 cents, of principal, and $750 37 cents of interest and cost. Was the evidence such as to warrant this verdict?

Ruth E. Reid was entitled to a verdict for the difference between what she had advanced to Field & Adams, or paid on their account, and what she had been repaid by them. She was not entitled to a verdict for sums for which she had merely become *liable* on their account, but which she had not paid.

But in her account she charges Field & Adams with such sums, as thus:

She shipped two of the lots of cotton, one of twenty-eight bales and the other of seventy-one bales, to a New York house, and received from that house an advance of, say $1,488 98 &

$3,858 30=$5,347 28, on the two lots. That house sold the two lots for, say $1,051 26 & $2,878 05=$3,929 31. This cotton, therefore, lacked of paying the advance on it, the difference between $5,347 28 and $3,929 31, and that was $1,417 87. For this last sum, therefore, she was liable to the New York house. And she settled that sum with the New York house; but settled it at twenty-five cents in the dollar.

All that she paid, then, on account of Field & Adams, in respect to these two lots of cotton, was this twenty-five per cent of the said sum of $1,417 87. Perhaps she may have also paid the expenses of the shipment of the cotton.

At any rate, she charges Field & Adams in her account, with the whole sum of $1,417 87, instead of with only twenty-five per cent. of that sum.

And the jury probably allowed the charge.

She also shipped one lot of cotton to a house in Philadelphia, a lot of eighty-three bales; and received from that house an advance on the lot of, say, $4,505 21. That house sold this lot for $3,189 71. This lot therefore lacked $4,-505 21—$3,189 71=$1,416 50 of paying the advance made on it. For the sum of $1,416 50, therefore, Ruth E. Reid became *liable* to pay the Philadelphia house, on account of Field & Adams.

But this sum she had not paid them at the commencement of the suit; and yet this sum makes a part of the account against them, on which the suit was brought; and it is a sum that was probably allowed to her by the jury in the verdict.

At all events, it is safe to say, that if the jury did not take the charges for the losses on these two shipments into the account, in making up their verdict, they must have made up their verdict, in good part, without evidence. For if we deduct from the account what ought to be deducted from it in respect of these items, the balance in favor of Ruth E. Reid will be much less than the amount of the verdict.

[1.] We think, then, that according to the evidence, the verdict was two large; and therefore, that the ground for the motion, that says that the verdict was not supported by the evidence, was a good ground.

[2.] Ought the Court below to have allowed the defendants to be sworn as witnesses in their own behalf? We think not. The doctrine of *necessity* relied on by the counsel for the plaintiffs in error, is a doctrine confined to a limited number of cases, and this case is not of the number.

Ought the jury to have allowed interest?

If the demand was a liquidated one, they ought; if it was not a liquidated one, they ought not.

The demand was a liquidated one, if it was *agreed to* by Field & Adams.

And it was, *prima facie*, agreed to by them, if the account sued on, containing it, was rendered to them, and was not in some way objected to by them. If only certain parts of it were objected to, it was liquidated as to the other parts.

Whether the account, in whole or in part, was or was not objected to by Field & Adams, was a question for the jury.

We think the Court ought to have granted the motion for a new trial; there being, as we think, one good ground for the motion—the ground in relation to the sufficiency of the evidence.

Judgment reversed.